[Shows v. Folmar, Sons & Co. *et al.*]

# Shows *v.* Folmar, Sons & Co. *et al.*

### *Bill in Equity for Settlement of a Partnership.*

1. *Bill for settlement of partnership when complainant not entitled to relief.*—Where a co-partnership was formed between individuals and a partnership, and after the dissolution of the co-partnership the partnership member of said firm files a bill seeking to have an accounting and settlement of said partnership, averring that although there had been a dissolution there had never been a settlement of the partnership affairs, and the individual member of said partnership in his answer admits the dissolution and denies that there had not been a settlement, and sets out facts going to show such settlement, and the evidence shows that after the dissolution there was a settlement of the partnership affairs between the individual member thereof and one of the firm constituting the other member, and that this member of the firm had the active management and control of said firm's business, and that the firm member of the partnership accepted the results of this settlement, the evidence in such case is insufficient to sustain the averments of the bill, but shows that the settlement of the partnership affairs had been had after its dissolution, and that, therefore, the complainant was not entitled to the relief prayed for.

2. *Appeals; how decree of chancery court considered.*—On an appeal from a decree rendered in a chancery suit, the Supreme Court must not, under the provisions of the statute, (Code, § 3826, subd. 1), indulge any presumption in favor of the chancellor's finding on the facts, but it is the duty of the Supreme Court to weigh the evidence and give judgment as they deem just.

APPEAL from the Chancery Court of Crenshaw.

Heard before the Hon. WILLIAM L. PARKS.

The bill in this case was filed by the appellees against the appellant, T. W. Shows. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.

Upon the final submission of the cause on the pleadings and proof, the chancellor decreed that the com-

plainants were entitled to the relief prayer for, and ordered accordingly. From this decree the defendant appeals, and assigns the rendition thereof as error.

J. M. CHILTON, D. M. POWELL and M. W. RUSHTON, for appellants.—If there was a settlement of the partnership shown by the evidence, the complainant was not entitled to the relief, and the decree of the chancellor should be reversed; and this is true, whether the settlement was final, including all the partnership transactions or not. If there was a settlement at all, it was shown by the evidence to have been made after the dissolution, and under the averments of the bill the complainant was not entitled to relief.—2 Bates on Partnership, § 957; *Parkhurst v. Muir,* 7 N. J. Eq. 555; *Desha v. Smith,* 20 Ala. 747; 2 Lindley on Partnership, § 513; *Foster v. Ryan,* 17 Gratt. 322; *Heween v. Wetteen,* 31 Beav. 315; *Milford v. Milford,* McLe. & Y. 150.

FOSTER, SAMFORD & CARROLL, *contra.*—On the facts of this case, as shown by the evidence, the complainant was entitled to the relief prayed for. The testimony as shown by the affidavit of R. H. Folmar, which was introduced in evidence, was not sufficient to show that no settlement had been made.—17 Am. & Eng. Ency. of Law, 926; *Jeffrey v. Castleman,* 75 Ala. 64.

Every presumption should be indulged in favor of the finding of the chancellor on the facts in a case because of his proximity to the parties interested, and of his familiarity with the character of the party testifying and of the testimony. And unless the preponderance of the testimony is against the finding of the chancellor this court should not disturb his ruling and his decrees in the case.

DOWDELL, J.—The bill in this case is filed by James Folmar Sons & Co., a partnership, and Folmar Bros., another partnership, which is alleged to have succeeded to the rights of the former, and claiming the benefits of whatever decree, James Folmar Sons & Co. may be entitled to under the allegations of the bill. The pur-

pose of the bill is to have an account and settlement of
the partnership of T. W. Shows & Co., which said firm,
it is averred, was composed to James Folmar Sons &
Co. owning one-half interest, and T. W. Shows, who is
made defendant in the bill, owning the other half inter-
est, in said partnership of T. W. Shows & Co. The
bill alleges that the partnership of T. W. Shows & Co.
was formed on the 16th day of October, 1893, and the
object of its formation was to conduct and carry on a
livery and sale stable business in the town of Luverne,
Ala. It is averred that James Folmar Sons & Co. con-
tributed to the capital stock of the concern, at the time
of its creation, the sum of seven hundred dollars, and
that T. W. Shows contributed five hundred and ninety-
nine and 50-100 dollars, or one hundred and 50-100 dol-
lars less than the other partner. It is also averred in
the bill that Shows managed and controlled the busi-
ness of the partnership, and that the partnership con-
tinued in business until on or about the 14th day of
August, 1894, when it was dissolved by mutual consent,
but alleges that no settlement of the partnership busi-
ness was ever had. The bill contains the further, ap-
parently inconsistent allegation and statement, that
from the 16th day of October, 1893, to the 8th day of
February, 1895, (the latter date covering a period of
about six months after the day of the alleged dissolu-
tion of the partnership), James Folmar Sons & Co.
contributed to the capital stock of the partnership, the
additional sum of $4,372.88, and as to the defendant
Shows, it states that "he contributed no money or other
thing of value to said partnership except said sum of
$599.50, *and from time to time deposited the sum of
$2,298.89 in the bank of James Folmar Sons & Co.,
known as the Bank of Luverne,* on account of his share
of the capital stock of said partnership." It is averred
that the money so contributed went into said business
and became a part of its capital stock. The bill also
avers, that Shows had brought suit in the circuit court
of Crenshaw county in his own name against James
Folmar Sons & Co. and Folmar Bros., but the matters
involved in said suit were partnership matters of the
firm of T. W. Shows & Co., which said suit is prayed to

be enjoined. There are other averments as to agreement by James Folmar Sons & Co. to discount certain notes and mortgages when taken by T. W. Shows & Co. in the sale of mules. The prayer of the bill is for a settlement of the partnership, and for an accounting "of all and every of said partnership dealings and transactions." The bill is in no aspect, whether considered in reference to the averments or the prayer for relief, one to falsify and surcharge. It is round in its allegations, that there has never been any settlement of the partnership, and prays for a settlement and an accounting.

The respondent Shows, answering the bill, admits the formation of the partnership of T. W. Shows & Co. on the 16th day of October, 1893, and its dissolution in August, 1894. He denies that James Folmar Sons & Co. contributed any sum in money to the capital stock of the partnership, but avers that they contributed horses, mules and vehicles at an agreed valuation of $1,400, of which the respondent paid them on the same day $599.50, and $100.50 was charged to him on the books of James Folmar Sons & Co. and which was afterwards paid, and that this was all the money or property contributed by either party to the concern. He expressly denies that James Folmar Sons & Co. afterwards contributed said sum of $4,372.88, or any other sum, or that the respondent afterwards contributed any other sum to the capital stock, other than as stated as to paying one-half of the agreed valuation of the horses, mules and vehicles furnished by James Folmar Sons & Co. The answer shows that the defendant ran an individual account in his own name with James Folmar Sons & Co., and made deposits in the Bank of Luverne, which was run by James Folmar Sons & Co. and for which certificates were issued to him in his individual name, and that his individual account with James Folmar Sons & Co. and with the Bank of Luverne, had no connection whatever with the partnership matters of T. W. Shows & Co. It was also shown by the answer of respondent that there were mutual accounts between the firm of T. W. Shows & Co. and the firm of James

Folmar Sons & Co. The answer further denies that the partnership matters of the firm of T. W. Shows & Co. are unsettled, and avers, that upon the dissolution, there was a division of the assets of the partnership between himself and James Folmar Sons & Co. and a full settlement of the partnership matters.

The cause was heard for final decree upon the pleadings and proof, and what we have stated above as to the allegations of the bill and the denials in the answer, are sufficient for present purposes.

There are questions suggested and discussed in the brief of appellant's counsel relative to the pleadings, which we deem it unnecessary to consider, as we think the case may be properly determined on the main issue by the proof. The bill alleges the formation and dissolution of the partnership, and then alleges that no settlement of the partnership affairs was ever had. The answer admits the allegations as to the formation and dissolution, but expressly denies the allegation that no settlement of the partnership matters was made.

The evidence without conflict shows that R. H. Folmar, one of the firm of James Folmar Sons & Co., and who is a complainant in the bill, had the active management and control of the business of his said firm, and that he representing the firm of James Folmar Sons & Co. with T. W. Shows effected the partnership of T. W. Shows & Co., and also its dissolution. The evidence further shows, and we might say without dispute, that upon the dissolution of said partnership, a division of its assets was made, in which division T. W. Shows received the horses, mules and vehicles on hand, and the book accounts of the firm, amounting to about $100, while James Folmar Sons & Co. received the notes and mortgages due the concern, amounting to about $1,400; that immediately upon the dissolution and division of the assets, T. W. Shows, with the property allotted to him, set up and carried on the livery and stable business in his own name; and James Folmar Sons & Co. proceeded to collect the notes and mortgages so received by them; and that neither party afterwards pretended to claim any interest in the property of the other under said division and allotment, un-

til T. W. Shows began to press the collection of an individual claim, which he held against the firm of James Folmar Sons & Co. The evidence also shows, that at the time of the dissolution the firm of T. W. Shows & Co. owed only two small debts, one of which was a disputed claim, and that these debts were subsequently settled in accordance with an agreement made between Shows and R. H. Folmar at the time of the dissolution, by James Folmar Sons & Co. paying one, and T. W. Shows and James Folmar Sons & Co. each paying one-half of the disputed claim, after the same had been reduced to judgment against the firm. The evidence also shows that during the existence of the partnership, mutual accounts were run between T. W. Shows & Co. and James Folmar Sons & Co., and it is claimed by the defendant that in the settlement on the dissolution by agreement these accounts were settled by set-off of one against the other. This is disputed by the complainants, but it is a pertinent fact in support of defendant's contention that the difference in the two accounts was small and further, no question as to them was ever raised, until the defendant Shows began to press the collection of his individual demand and claim against the complainants.

Upon the whole evidence, it is quite evident that the theory of the complainants, that there had never been a settlement of the partnership affairs is based largely upon the erroneous supposition that the individual account of T. W. Shows with James Folmar Sons & Co. and with the Bank of Luverne, a branch business of James Folmar Sons & Co., entered into the partnership business of T. W. Shows & Co. The nature and character of this individual account, the items which enter into it, the way in which it was carried on the books of James Folmar Sons & Co. and the Bank of Luverne, undoubtedly, we think, support the testimony of T. W. Shows, that the account had no connection whatever with the partnership matters of T. W. Shows & Co.

R. H. Folmar, who is made a complainant in the bill, and who is conceded to have been the active managing partner in the firm of James Folmar Sons & Co., is not

examined as a witness in the case, but an affidavit made by him is put in evidence by the respondent as an admission against interest. In this affidavit it is admitted, that there was a full and complete settlement of all the partnership matters of T. W. Shows & Co. upon its dissolution. This admission is conclusive against him, as a complainant, to any relief under the bill. It is of no consequence that the other partners of the firm of James Folmar Sons & Co. were not present, at the time of the settlement and division of the assets of the firm of Shows & Co. by T. W. Shows and R. H. Folmar, the managing partner in the business of Folmar Sons & Co., since the fact remains that this firm accepted the assets allotted to it in the division and has continued to hold and enjoy the fruits of the settlement. If a ratification of the conduct of R. H. Folmar in making the settlement and division were necessary, this is sufficient from which to infer a ratification. But the purpose of the bill is not to falsify and surcharge. It is not pretended that the settlement was fraudulent or unfair, but that in fact, there never was a settlement. Without discussing the testimony of the witnesses in detail, but giving to each full and fair consideration, when taken in connection with their opportunities of knowing the facts, and also in connection with attendant circumstances and facts that are undisputed, we are firmly persuaded, that a settlement of the partnership affairs of T. W. Shows & Co. was had at the time of its dissolution between T. W. Shows representing himself, and R. H. Folmar, a member of the firm of James Folmar Sons & Co. representing the latter firm, which the bill alleges constituted one of the members, or partners, of the firm of T. W. Shows & Co.

It is insisted by counsel for appellees that every presumption should be indulged in favor of the finding of the chancellor on the facts, and that unless the preponderance of the testimony is against the finding of the chancellor this court should not disturb his decree. The doctrine here invoked is directly opposed to the express language of the statute, section 3826, subdiv. 1, which reads as follows: "The Supreme Court has authority—
1. To exercise appellate jurisdiction coextensive with

the State, under such restrictions and regulations as are prescribed by law; but in deciding appeals from the chancery court no weight shall be given the decision of the chancellor upon the facts, but the Supreme Court shall weigh the evidence, and give judgment as they deem just." It is thus made plain by the statute, that no presumption can be here indulged in favor of the chancellor's finding on the facts, and our plain duty is to weigh the evidence and give judgment as we deem just.

Our conclusion is, that the allegations of the bill are not sustained by the proof. And it follows, that the decree of the chancellor must be reversed, and a decree will be here rendered dismissing the bill.

Reversed and rendered.